IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| RUDY SEPULVEDA,<br>          Plaintiff,<br><br>    v.<br><br>DEPUTY WARDEN RACHEL BRAY,<br>et al,<br>          Defendants. | No. 25-cv-00276-MSM-PAS |

ORDER

Mary S. McElroy, United States District Judge.

The filing by the Plaintiff of an Application to Proceed *In Forma Pauperis* (ECF No. 4) requires the Court to review the Complaint (ECF No. 1) and, in this case, its Addendum (ECF No. 1-1) and Exhibits (ECF No. 1-2), to determine whether together they state a plausible federal claim for relief. 28 U.S.C. § 1915(e)(2)(B)(ii) (screening); *Ashcroft v. Iqbal,* 556 U.S. 662, 667 (2009) (plausible claim). The Court has done so and concluded that this Complaint does not. In consideration of the Plaintiff's *pro se* status, the Court will, instead of dismissing the case outright, extend a thirty (30) day period in which the Plaintiff may, if he chooses, file an Amended Complaint fixing the defects identified below. The Plaintiff should understand that the identification by the Court of *some* defects that preclude the Complaint from passing screening as it is now written is not a determination that there are not *other* defects that may arise if an Amended Complaint is filed and subjected to challenge by the defendants.

1

First, Mr. Sepulveda has gone to some trouble to make clear that he is suing the eight (8) defendants he names in their *official* capacity only. As to three (3), he checked off only the box for "official" capacity. As to three (3) more, he specifically hand-wrote "official capacity" on the Complaint next to their names. He did not specify a capacity as to Lt. Steve Saritelli, but in light of the deliberateness with which he specified capacity regarding the other defendants, this seems an oversight and the Court infers that his intention was to sue Lt. Saritelli in his official capacity.

This lawsuit seeks both damages and injunctive relief. But state officials when sued in their official capacity in a 42 U.S.C. § 1983 action, are stand-ins for the state itself. The state, however, is not a "person" within the meaning of § 1983 and therefore cannot be sued under § 1983 for money damages. *Will v. Michigan,* 491 U.S. 58, 71 (1989). The claims made in Mr. Sepulveda's Complaint for damages against those state officials/defendants in their official capacities are therefore vulnerable to dismissal.

State officials can, however, be sued for injunctive relief, *id.* at 71, n.10, citing *Kentucky v. Graham,* 473 U.S. 159, 167, n.14 (1985). This Complaint seeks two injunctive remedies. The plaintiff wants a transfer to general population and wants restoration of 135 days of lost good time. The request for restoration of good time presents a potential problem, as the United States Supreme Court has held directly that a civil action is not an appropriate vehicle for restoration of good time because the result would be a shortening of the sentence. The Court reasoned that the appropriate vehicle to challenge the loss of good time is a petition for habeas corpus.

2

*Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973). In this Court, a petition for habeas corpus by a petitioner in state custody is brought under 28 U.S.C. § 2254 and it requires exhaustion of state court remedies before it may be entertained.

Reviewing a Complaint that, like this one, sought both restoration of lost good time and damages based on the decisions that took away the good time, the First Circuit has held that a prisoner must first seek habeas corpus (exhausting state remedies) and may pursue damages in federal court only after a successful result in that habeas case. *DeWitt v. Wall*, 121 Fed. Appx. 398, 399 (1st Cir. 2004). *Accord, Doe v. Sanderson,* C.A. No. 16-cv-12068-IT, 2017 WL 1536402, at *1 (D. Mass. Apr. 27, 2017) ("{A] claim for money damages, based on allegations of the wrongful revocation of good time credits . . . is only available where the good time credits have been restored in a separate proceeding.").

Next, Mr. Sepulveda has sued everyone in the chain of command (except the Director of Corrections) on the theory that they are generally "responsible" for what goes on at the institution. Supervisory liability, however, requires certain and specific factual allegations. *Sanchez-Pereira-Castillo,* 590 F.3d 31, 49 (1st Cir. 2009) (conclusory allegation that supervisor responsible to ensure prisoner safety was insufficient pleading). Supervisory liability may attach if the supervisor is a "primary violator or direct participant in the rights-violating incident, or [] if the individual supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." *Id.* Under either theory of liability, there must be "an affirmative

3

link, whether through direct participation or through conduct that amounts to condonation or tacit authorization" between the actor and the underlying violation." *Id.,* quoting *Camilo-Robles v. Zapata,* 175 F.3d 41, 44 (1st Cir. 1999). A belief that higher-ups are generally responsible for, and aware of, what goes on in the institution is not sufficiently specific.

An additional problem with this Complaint is one of law: it assumes there is an entitlement to due process before an inmate can be transferred from one facility to a more restrictive one. That is only the case, however, if there is a clear expectation, grounded in state law, that one will *not* be transferred. *Meachum v. Fano,* 427 U.S. 215, 225 (1976). With respect to the claims related to the substantive actions of the disciplinary process, the Plaintiff is cautioned that the landmark case of *Wolff v. McDonnell,* 418 U.S. 539, (1974), guarantees primarily *procedural* safeguards, such as notice, a written statement of decision, and the presumptive ability to call witnesses and to present documentary evidence in the administrative proceeding. Mr. Sepulveda does not complain that he has been denied procedural due process. Instead, he complains that the investigation was not sufficient.

The claim that two defendants, Lts. McDaniels and Saritelli, ordered Mr. Sepulveda placed in A-mod knowing that he was likely to be assaulted because of gang rivalry, suggests an Eighth Amendment claim of failure to protect. Mr. Sepulveda alleges he is aligned with the Trinitarios ("3ni") gang and that he was assaulted by a Blood inmate while waiting in line for morning medicine. The elements of a failure to protect claim are that a defendant correctional officer knew of a

substantial risk of serious harm and disregarded that risk. *Calderon-Ortiz v. LaBoy-Alvarado,* 300 F.3d 60, 64 (1st Cir. 2002). It must be pleaded against defendants in their individual capacities, not their official ones, and must recite facts that show that the defendants knew of a substantial risk of serious harm and that they disregarded that risk which then resulted in a significant injury to the Plaintiff. This Complaint, in very general terms, alleges that officers knew there were "problems" in A-Mod, specifically a feud between 3ni members and Bloods. If it is Amended, it should include facts specifically about what the officers at issue knew and disregarded, and some circumstances of the assault.

The plaintiff is afforded thirty (30) days in which to file an Amended Complaint in accordance with the provisions of Fed. R. Civ. P. 15. If an Amended Complaint is filed, it will be screened in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii). If no Amended Complaint is filed on or before August 16, 2025, or if an Amended Complaint is filed but it does not state a plausible federal claim for relief, the case will be dismissed. The Motion to Proceed *In Forma Pauperis* (ECF No. 4) is deferred.

IT IS SO ORDERED:

/s/ Mary S. McElroy

Mary S. McElroy,
United States District Judge

July 17, 2025